```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MONIQUE GARCIA,
                        Plaintiff,                                    03 Civ. 05271 (GBD)

            -against-                                                 MEMORANDUM OPINION
                                                                      & ORDER
THE NEW YORK CITY ADMINISTRATION OF
CHILDREN"S SERVICES AND THE CITY OF
NEW YORK,
                        Defendants.
------------------------------------------------------------------x
```

GEORGE B. DANIELS, DISTRICT JUDGE:

Plaintiff, a Haitian female, brought this suit against defendants alleging discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq*, as well as violations of 42 U.S.C. § 1981, New York state law, and City Human Rights Law. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff, Monique Garcia, is a female Haitian immigrant and has been an employee of the New York City Administration for Children's Services ("ACS") since 1980 (previously called the Bureau of Child Welfare). She serves at ACS under the title of Supervisor Level I Welfare and is currently on leave for a worker's compensation injury. In 1986, while employed as a caseworker in the Queens Field Office, plaintiff filed a complaint of sexual harassment against two male co-workers, at least one of whom was an African-American male. Plaintiff alleged that the men made sexual remarks and gestures towards her. The matter was investigated by ACS and deemed unsubstantiated. In October of 1986 plaintiff wrote to the Commissioner of Social

Services and to Senator Alfonse D'Amato accusing two female supervisors of harassing her. Plaintiff claimed that the supervisors used racial and ethnic slurs in speaking to her. ACS investigated these charges as well and found that they were unsubstantiated.

Plaintiff began working in the Manhattan Field Office in 1987. In 1989, upon passing her civil service exam, plaintiff was promoted to the rank of Supervisor Level I and remains in that position. Plaintiff continued to work in the Manhattan Field Office until August 1999, when she was redeployed to the customer service department of the ACS Office of Child Support Enforcement ("OCSE"). Plaintiff alleges in her complaint that beginning soon after her transfer to OCSE in 1999, two African-American female co-workers, harassed plaintiff and used derogatory language in retaliation for plaintiff's 1986 complaint against the two male co-workers. The statements plaintiff accuses them of making in 1999 include calling plaintiff a "bitch" and "Haitian bitch" on multiple occasions, as well as announcing that plaintiff "filed against a black man, she has something against black man." (Akin Decl. Memorandum in Opposition, ¶ 10-11.)

On November 24, 1999, plaintiff wrote her superiors an internal complaint alleging harassment and hostile work environment during two training sessions. In a later six-page undated memorandum entitled "Retaliation from New Work Assignment O.C.S.E.," that refers to events as late as September 13, 2000, plaintiff accused various co-workers of harassment. In September 2000, plaintiff contacted ACS's Office of Equal Employment Opportunity ("OEEO") to make a complaint of harassment and conspiracy. In response, OEEO launched an investigation into plaintiff's allegations with the OEEO Director personally interviewing all the employees named in the complaint. OEEO found that plaintiff's allegations were unsubstantiated.

In 2001, plaintiff was assigned to be under the direction of one of the two African-American females whom she now alleges harassed her in 1999. Plaintiff alleges that from at least December 20, 2001 through at least January 16, 2002, that supervisor made such remarks as "[t]hese Haitians and immigrants think they can come over here and take over our jobs," and "foreign bitch." (Akin Decl. ¶ 16.) Plaintiff also alleges that she started receiving negative evaluations in her periodic reviews in 2001 because defendants were attempting to "justify their wrongdoing." (Plaintiff's Memorandum in Opposition, ¶ 37.)

On April 4, 2002, an incident occurred in Customer Service that involved plaintiff and her supervisor. Plaintiff was working with a customer and sought the assistance of her supervisor who was meeting with the OEEO director about a case. Plaintiff interrupted the meeting and became agitated, cursing and leveling insults at her supervisor. Plaintiff alleges that her outburst was provoked because the supervisor spoke to plaintiff in a harsh tone. The disturbance was reported for disciplinary action. Charges were filed on September 24, 2002, and the Informal Conference found the charges against plaintiff to be substantiated. A twenty-five day suspension as punishment was recommended. Plaintiff was suspended for twenty-three days without pay and alleges that the suspension was retaliation for plaintiff "challenging the discriminatory practices . . . ."

On July 15, 2002, plaintiff's supervisor deployed plaintiff to the Customer Service Telephone Inquiry Unit and assigned her a seat next to another African-American female. This person was one of several employees complained about in plaintiff's undated memoranda entitled "Retaliation from New Work Assignment O.C.S.E." Plaintiff alleges this move was also in retaliation for plaintiff's "criticism of the discriminatory practices." At some point soon

3

thereafter, plaintiff alleges that the previously complained about employee told a male employee, "[t]his is Ms. Garcia and she thinks that she is superior. That's a big one for you, now you can stay on her case." (Akin Decl. ¶ 22.) Plaintiff contends that this statement encouraged the male employee to stalk plaintiff when she would leave her desk and on one occasion to "hold[] his crotch and mak[e] strange noises" while staring at her. (Akin Decl. ¶ 22.) Plaintiff alleges that she informed the other female employee, in her capacity as the male employee's supervisor, of his behavior but her complaint was ignored.

On November 18, 2002, plaintiff filed a charge of hostile work environment, retaliation and discrimination based on sex, race, national origin and age with the Equal Employment Opportunity Commission ("EEOC"). In particular, plaintiff targeted her supervisor, and both of the other female and male employees, accusing them of creating an atmosphere that encourages clients and co-workers to treat plaintiff with disrespect in retaliation for plaintiff's earlier complaints.

Plaintiff brought this lawsuit against ACS and the City of New York on the same grounds as alleged in her EEOC charge. She claims that the employees acted in concert against plaintiff because of a belief that immigrants in ACS are there to take jobs that belong to African-Americans.  Moreover, plaintiff claims that there was a conspiracy among the three and possibly others to create a hostile work environment with the purpose of driving immigrant workers out of the agency.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). The burden is on the moving party to demonstrate that no genuine factual dispute exists. See Celotex Corp. v.

Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to show that there is a genuine issue for the trier of fact to resolve. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998). A court will resolve all factual disputes in favor of the non-moving party. See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir.1999). If there is evidence from which a reasonable inference could be drawn in favor of the non-movant, then summary judgment is not appropriate. See Tri-State Employment Serv., 295 F.3d at 260.

## TIMELINESS OF PLAINTIFF'S TITLE VII CLAIMS

Allegations of discrimination under Title VII must be raised in a charge filed with the EEOC within three hundred days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1). See, e.g., Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74 (2d Cir. 2003). Plaintiff filed her charge with the EEOC on November 8, 2002. Thus, plaintiff's Title VII claims based solely on conduct that occurred prior to January 12, 2002 are untimely. Defendants argue, therefore, that all of plaintiff's claims involving events that occurred prior to January 12, 2002, concern actions that are time-barred and must be dismissed. Plaintiff responds by asserting that defendants' conduct leading up to and continuing after the filing of the November 2002 EEOC charge should be considered part of the continuing violations exception to the statutory time period.

The Second Circuit Court of Appeals has recognized the continuing violations exception

to allow certain Title VII claims to be brought which would otherwise be time barred. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); see also Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993). The continuing violations exception applies when the defendant is alleged to have implemented a discriminatory policy or mechanism over a prolonged period of time. See Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999). Under this exception, filing a "timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997). A valid claim of a continuing violation must demonstrate that at least one of the discriminatory acts under the policy occurred within the 300 days prior to the filing of the claim. See Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994); see also Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992).

The United States Supreme Court clarified the proper use of the exception in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), finding that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. The Court noted that the Circuit Court of Appeals had incorrectly applied the continuing violations doctrine "to what it termed serial violations, holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." Id. at 114 (internal quotations omitted). Rather, for the continuing violations exception to apply, plaintiffs must show that the defendant implemented a specific policy or mechanism of discrimination. See

Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994); Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993). A continuing violations exception is inappropriate when there is no identified policy, but merely related acts of discrimination. See Lambert, 10 F.3d at 53 (citing Stoller v. Marsh, 682 F.2d 971, 975 (D.C. Cir. 1982)).

Plaintiff argues that she is the victim of a conspiracy to discriminate against her and immigrants more generally. She alleges that ACS has a policy and practice of such discrimination. However, plaintiff has presented no evidence, direct or circumstantial, that there was any such conspiracy or policy in place. Simply invoking the terms "conspiracy," "policy," and "practice" is insufficient to meet the requirements of the continuing violations exception to the Title VII statute of limitations. See Weeks v. New York State (Div. of Parole), 273 F.3d 76, 82-84 (2d Cir. 2001). In the absence of any evidence of a conspiracy or policy on behalf of ACS to discriminate, the continuing violations exception to the Title VII statute of limitations can not apply. Therefore, any incidents occurring prior to January 12, 2002 are time-barred.

## TITLE VII DISCRIMINATION

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a) (2002). A plaintiff must first establish a prima facie case of discrimination under the familiar burden-shifting analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see Graham v. Long Isl. R.R., 230 F.3d 34, 38 (2d Cir.2000) (citing Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1981)). To establish a prima facie case, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. Norville v. Staten Isl. Univ. Hosp., 196 F.3d 89, 95 (2d Cir.1999); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir.1997).

Plaintiff alleges that she has been discriminated against on the basis of her race, national origin, and gender in violation of Title VII. Defendants argue that plaintiff has not met the third and fourth elements of the prima facie case, in that plaintiff cannot demonstrate that she has suffered an adverse employment action other than her suspension, and that none of defendants' actions including the disciplinary action give rise to an inference of discrimination.

"A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." Norville, 196 F.3d at 95. Other circumstances that can also give rise to an inference of discrimination are criticism of a plaintiff's performance in ethnically degrading terms, racial comments about other individuals in the plaintiff's same protected class, the sequence of events leading up to the adverse employment decision, and the timing of the adverse employment action. See Chambers v. TRM Copy Cntrs. Corp., 43 F.3d 29, 37 (2d Cir.1994).

As a preliminary matter, plaintiff has failed to allege facts that demonstrate she has suffered from any discrimination on the basis of her race or gender. In fact, the two main people plaintiff points to as offenders of Title VII share plaintiff's racial and gender classifications as black females. Moreover, plaintiff fails to allege facts that show any causal connection between an adverse employment action and plaintiff's race or gender. Rather, plaintiff's claim of

8

discrimination in violation of Title VII is based solely on her status as a Haitian, or because she is not a natural born African-American citizen.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citing Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir.1999)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

The only adverse employment action plaintiff has identified is her 2002 suspension. However, plaintiff has failed to show any genuine issue of material fact that the circumstances she complains of give rise to an inference of discrimination. Plaintiff concedes that on April 4, 2002, she interrupted a meeting between her superiors and used profanity directed at her supervisor. Charges were filed, and plaintiff was suspended as a result of those proceedings after a finding was made that those charges were substantiated. Plaintiff has not sought to demonstrate that similarly situated employees of another race were treated differently. Nor has she made any showing that ACS's explanation for the suspension is pretextual or otherwise discriminatorily motivated. Plaintiff's allegations of discrimination relating to her suspension are based solely on conclusory statements and personal beliefs. See Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996) (assertion of personal beliefs is insufficient to show pretext), cert. denied, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). Plaintiff has not presented any direct or circumstantial evidence from which a reasonable fact-finder could infer a causal relationship

between the plaintiff's protected class membership and the discipline to which she was subjected.

Plaintiff also suggests that any negative evaluations she received should be considered an adverse employment action. However, these evaluations, either by themselves or in total with the other circumstances alleged, do not constitute an adverse employment decision, nor are they, in any event, sufficient to raise an inference of discrimination. Plaintiff's evaluation dated August 21, 2003, in which plaintiff received a rating of "Conditional," is the only evaluation in which plaintiff received a rating below "Good." The evaluations were completed by plaintiff's supervisors, who therefore, had the authority to criticize plaintiff's work. Further, on their face, the evaluations contain legitimate, non-discriminatory critiques of plaintiff's work performance.

Moreover, the evaluations were unattended by a demotion or tangible loss, and therefore did not materially alter plaintiff's employment conditions. See Crady v. Liberty Nat. Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993); Castro v. N.Y. City Bd. of Educ., No. 96 cv 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (finding that a negative evaluation and written reprimand that was not attended by a demotion or tangible loss did not materially alter plaintiff's employment conditions); Henriquez v. Times Herald Record, No. 97 cv 6176, 1997 WL 732444, at *5 (S.D.N.Y. Nov. 25, 1997) (criticisms and threats of disciplinary action are not adverse employment actions), aff'd, 165 F.3d 14 (2d Cir. 1998). Thus, the evaluations cannot be considered an adverse action. See Johnson v. City of Fort Wayne, 91 F.3d 922 (7th Cir. 1996) (negative employment evaluations did not constitute adverse employment action); Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) ("Given that plaintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment.").

Plaintiff has offered no evidence to refute the accuracy of the evaluations. Nor has plaintiff pointed to any direct or circumstantial evidence indicating that the evaluations were motivated by a discriminatory purpose. Plaintiff instead relies on her subjective belief that her evaluations were more negative than they should have been. Plaintiff's subjective disagreement with her supervisor's reviews of her work is not sufficient to establish a prima facie case of discrimination. See Holt v. KMI-Continental, Inc., 95 F.3d 123 (2d Cir. 1996).

Thus, plaintiff has failed to meet her burden, under McDonnell Douglas, of establishing a prima facie Title VII discrimination claim. This Court, therefore, grants summary judgment in favor of defendants on plaintiff's Title VII discrimination claim. Plaintiff has not demonstrated a genuine issue of material fact that she suffered from an adverse employment action, or that the circumstances alleged raise an inference that she was discriminated against on the basis of race, national origin, and/or gender.

## HOSTILE WORK ENVIRONMENT

The Supreme Court has interpreted Title VII to reach, among other employer conduct, "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys, Inc., 510 U.S. 17, 21 (1993). To prove the existence of a hostile work environment, plaintiff "must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Isolated instances of harassment ordinarily do not rise to this level." Cruz, 202 F. 3d at 570 (citing Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,

957 F.2d 59, 62 (2d Cir. 1992)). In determining whether an actionable hostile work environment claim exists, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

In support of her hostile work environment claim, plaintiff argues that she was called names by co-workers and supervisors and "exposed to a hostile and discriminatory work environment" on what she characterizes as "a daily basis." (Plaintiff's Memorandum in Opposition, ¶ 49.) Plaintiff claims the hostile treatment began with her 1986 sexual harassment complaint and has continued ever since. However, plaintiff can point to only a few occasions on which she believes a derogatory comment was made to her. This number is even smaller when narrowed to the specific grounds of the Title VII discrimination claim. See Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."). Even if the specific incidents plaintiff alleges occurred are true, they are insufficient as a matter of law to rise to the level of a hostile work environment. The few offensive utterances over a period of over sixteen years does not reach the level of severity necessary to demonstrate a hostile work environment.

This Court, therefore, grants summary judgment in favor of defendants on plaintiff's Title VII hostile work environment claim as plaintiff has not demonstrated a genuine issue of material

fact that she suffered from a hostile work environment.

## **TITLE VII RETALIATION**

In retaliation cases, courts also apply the three-part burden shifting analysis established by the United States Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Gordon v. N.Y. City Bd. of Ed., 232 F.3d 111, 118 (2d Cir. 2000). "To establish a prima facie case of such retaliation, the plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282 (2d Cir. 2001). To demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry Co. v. White, 126 S.Ct. 2405, 2415 (2006) (internal quotations omitted).

Plaintiff need satisfy only a de minimis burden of proof at the prima facie stage, after which the burden shifts to the defendants to rebut plaintiff's case by identifying a legitimate, non-discriminatory reason for the adverse action. Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000). Once the defendants have identified such a reason, the "presumption of discrimination arising with the establishment of the prima facie case drops from the picture." Id. The burden then shifts back to the plaintiff to produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendants] were false, and that more likely than not [the discrimination alleged by plaintiff] was the real reason for the

[adverse action]." Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996).

Relevant to this lawsuit, plaintiff engaged in two protected activities during her time with ACS: (1) the sexual harassment complaint filed in 1986; and (2) the EEOC complaint filed in November 2002. It is undisputed for purposes of this motion that defendants knew of plaintiff's protected activities. Plaintiff alleges that in retaliation for her 1986 complaint filed on grounds of sexual harassment against an African-American male, two adverse actions were taken against plaintiff: (1) the filing of disciplinary charges against plaintiff in September 2002 resulting in her ultimate suspension; and (2) giving plaintiff more negative evaluations beginning in 2001.

Even if these actions were to rise to the level of adverse employment actions under the broader definition granted for retaliation claims, plaintiff has made no causal connection between the protected activities and the adverse employment actions. Furthermore, the time frame does not support plaintiff's allegations. The supposed retaliatory actions occurred prior to the November 2002 EEOC complaint, and more than fifteen years after the initial 1986 sexual harassment complaint. Moreover, defendants offered legitimate explanations for the suspension and the evaluations which plaintiff has been unable to refute. Plaintiff has presented no evidence, direct or circumstantial, nor any genuine issue of material fact, that would allow a reasonable jury to conclude that any so-called adverse employment actions were the result of discrimination or retaliation for plaintiff's complaints. Thus, this Court grants summary judgment in favor of defendants on plaintiff's retaliation claim.

## 42 U.S.C. § 1981

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment. See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000). Section 1981 only encompasses racial discrimination. Therefore, all claims based on plaintiff's national origin and gender must be dismissed since plaintiff has failed to allege any specific instances of racial discrimination. There is no evidence, direct or circumstantial, that would allow a reasonable jury to find that she has been discriminated against because she is black. Accordingly, defendants' motion for summary judgment on the § 1981 claim is granted.

## STATE AND LOCAL LAW CLAIMS

Because plaintiff's federal claims fail in their entirety, this Court declines to exercise supplemental jurisdiction over plaintiff's non-federal claims. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## CONCLUSION

Defendants' motion for summary judgment is granted. This case is dismissed.

Dated: New York, New York
September 26, 2007

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

15